UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Joyce H. Drechen,

                Plaintiff,

vs.

Rodenburg LLP d/b/a
Rodenburg Law Firm, and
LVNV Funding LLC,

                Defendants.

Case No. 0:22-cv-00705 (JRT/LIB)

**DEFENDANT RODENBURG LLP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

_____

## FACTS

Plaintiff incurred the debt in question. [Complaint (Doc. 1), ¶10; Mem. in Opp., p. 2]. Plaintiff does not allege that she directly notified Defendant Rodenburg LLP that it should cease communication with her, or that she was represented by a lawyer. Plaintiff does allege that, on June 3, 2020, her attorney sent a letter to Defendant LVNV advising that the attorney represented her and that she wished to have no further communication from LVNV regarding the debt. [Complaint, ¶12; Mem. in Opp., p. 2]. On January 7, 2022, Rodenburg sent Plaintiff's attorney Mark Vavreck a letter by facsimile, stating [Complaint, ¶5; Declaration (Doc. 11-1 ), Ex. A]:

> Please advise if your office represents the above referenced individual. If so please send written confirmation to our office by January 12, 2022. If we do

1

not hear from you we will assume there is no formal relationship in place and will contact this individual directly.

Plaintiff's attorney did not review the letter of January 7 until January 10, and he did not respond to the letter. He sent a copy of the letter by U.S. mail to Plaintiff on January 10. [Complaint, ¶18]. He discussed the matter with Plaintiff on January 13. [*Id.*, ¶19]. The Complaint does not allege that Plaintiff's attorney made any attempt to contact Rodenburg. On January 18, 2022, Rodenburg sent Plaintiff a letter conforming to Regulation F, specifying information required to be included in a debt collector's initial communication with a debtor. [Declaration, Ex. B; Complaint, ¶20].

The Complaint alleges two sources of damages [¶¶26-27]:

> 26. Defendants caused Plaintiff to expend time and resources to hire an attorney to defend herself and vindicate her rights.
>
> 27. Defendants caused Plaintiff emotional distress and embarrassment.

As for "emotional distress and embarrassment", the Complaint alleges [¶24]:

> 24. Plaintiff has suffered actual damages as a result of these illegal collection communications in the form of nervousness, fear of answering the door and telephone, embarrassment, depression, hopelessness, as well as physical symptoms such as headaches, digestive disorders and chronic pain.

The Complaint does not allege that Plaintiff sought medical attention or treatment for the alleged physical symptoms.

## PROCEDURAL BACKGROUND

Plaintiff claims (Mem. in Opp., pp. 4-6) that Rodenburg violated the "meet and confer" provision of Local Rule 7.1. Rodenburg's Meet and Confer Statement (Doc. 12)

2

states that it had "conferred with counsel for Plaintiff by email." Plaintiff argues that Rodenburg's sole communication with her attorney was its email of March 18. [Mem. in Opp., p. 5]. Plaintiff's attorney neglects to mention that he sent a reply email to this March 18 email, threatening sanctions if Rodenburg brought a motion to dismiss and leaving no doubt that further conferring would be futile. In any event, Rodenburg has since contacted Plaintiff's attorney and they conferred by telephone without resolving their differences.

## ARGUMENT

### I. Because Plaintiff lacks Article III standing, this case must be dismissed for lack of subject matter jurisdiction.

Plaintiff concedes that she has the burden of establishing subject matter jurisdiction, which requires an actual, concrete injury in fact resulting from Defendants' conduct. Plaintiff argues that her alleged damages are "tangible" and that, even if they are intangible, they are concrete because they are similar to damages recoverable at common law for the tort of intrusion on seclusion.[1] Plaintiff cites no authority for the proposition that the alleged injuries are the sort of "physical harm" referred to as tangible injuries in *Ojogwu v. Rodenburg Law Firm,* 26 F.4th 457, 462 (8th Cir. 2022). Headaches, stomachaches and pain arising out of emotional distress are not specific tangible injuries which satisfy the

---

[1] Plaintiff's Complaint alleges (¶26) that she was damaged by hiring an attorney to vindicate her rights. She makes no argument on this motion that this constitutes an Article III injury in fact, so it is presumed abandoned. In *Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022), the court found no standing, stating: "the concreteness requirement would be an empty one if all it took was contacting a lawyer and filing suit."

3

concrete injury requirement without a showing that they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC* v. *Ramirez,* 141 S.Ct. 2190, 2204 (2021).

Regardless of whether the injuries alleged would otherwise constitute injury in fact, the Complaint fails to plausibly allege a causal connection between Rodenburg's letter and the alleged injuries. In *Ojogwu*, the Plaintiff turned over to his attorney a communication (garnishment papers) he alleged was sent him when the debt collector knew he was represented by an attorney. Plaintiff tries to distinguish *Ojogwu* on the ground that the garnishment papers were beneficial to the debtor because they informed him of his rights under Minnesota garnishment law. This, however, is no real distinction. The Consumer Financial Protection Bureau has determined, in Regulation F (12 CFR § 1006.34), that the information in this letter is beneficial to debtors and that the information must be provided in the debt collector's initial communication with a consumer. *Ojogwu* holds that the plaintiff failed to plausibly allege a concrete injury in fact caused by the alleged FDCPA violation. That reasoning applies here. It is not plausible that the letter correctly advising Plaintiff of her rights is causally connected to the injuries she claims. Plaintiff points to nothing in the content of Rodenburg's letter that caused her to do anything. The Complaint alleges nothing other than her distress over being the subject of debt collection, and that is insufficient to plausibly allege Article III standing. *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855 (6th Cir. 2020).

Plaintiff claims (Mem. in Opp., p. 10) that sending her the Regulation F letter

"invades a privacy interest analogous to the tort of intrusion upon seclusion," relying on *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021). *Lupia* defined the common law tort as one which "imposes liability for intrusions upon a plaintiff's privacy, such as when a defendant demands payment of a debt by making repeated telephone calls with such persistence and frequency as to amount to a course of hounding the plaintiff." Despite the "persistence and frequency" requirement at common law, *Lupia* held that a single voice message left on the plaintiff's answering machine when the debt collector had been notified to cease communications gave rise to an injury of the same kind as the injury redressed at common law by the tort of intrusion upon seclusion. The essential nature of the tort requires highly offensive persistent conduct [Restatement (Second) of Torts, 652B, comment d]:

> There is ... no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with **such persistence and frequency as to amount to a course of hounding the plaintiff**, that becomes a substantial burden to his existence, that his privacy is invaded. [emphasis added].

*Lupia* is in error for finding a sufficiently close relationship between a violation of §1692g(b) and the common law tort of intrusion on seclusion as to make a concrete injury out of a single letter. In *Transunion LLC v. Ramirez*, 141 S.Ct. 2190, 2209, 210 L.Ed.2d 568 (2021), the Court found allegations insufficiently analogous to the common law tort of defamation where they did not allege publication: "Publication is 'essential to liability'

5

in a suit for defamation. Restatement of Torts § 577, Comment a, at 192." *Lupia* claims that its plaintiff had sufficiently alleged all the necessary components of intrusion on seclusion, ignoring the common law necessity of persistent hounding conduct.

*Lupia*, like the Plaintiff here (Mem. in Opp., pp. 10-11), looks to the FDCPA's general purpose of eliminating abusive collection practices, but ignores the specific circumstances of this case. Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors", but also "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The Act does have provisions closely related to the common law tort of intrusion on seclusion. For example, 15 U.S.C. § 1692d prohibits the same sort of persistent hounding that the common law tort of intrusion on seclusion, and its prohibitions are closely analogous to that tort. 15 U.S.C. § 1692c is not closely analogous to that tort, particularly where the alleged violation is sending a Regulation F letter.

The other cases relied upon by Plaintiff are cases involving text messages sent in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020); *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85 (2nd Cir. 2019), and *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037 (9th Cir. 2017). That Act is specifically directed at invasions of privacy by the use of autodialers producing unwanted text messages, and the cases are not instructive here. Plaintiff's Complaint fails to plausibly allege that she has suffered a concrete injury in fact,

6

and it must be dismissed for lack of Article III standing.

## II. Because the Complaint fails to allege plausible grounds for relief under the FDCPA, it must be dismissed under Fed.R.Civ.P. 12(b)(6).

### A.  15 U.S.C. § 1692c(a)(2).

Plaintiff claims that Rodenburg's letter of January 7, asking whether Plaintiff's attorney was representing Plaintiff, and stating its intention to contact the Plaintiff directly if that was not the case, was a threat to take action that could not legally be taken[2]. [Mem. in Opp., p. 13].  Section 1692c(a)(2) makes it clear that Rodenburg was within its rights to contact the Plaintiff directly if Plaintiff's attorney did not respond within a reasonable time, or if Plaintiff's attorney consented to direct contact.  Plaintiff argues that the January 7 letter gave attorney Vavreck only five days to respond, and that is not a reasonable time.  However, Rodenburg took no action until Vavreck failed to respond after 11 days.  That was plainly a reasonable time to respond.  Plaintiff's attorney Vavreck had ample time to respond, and he cannot refuse to respond and then claim he was not consenting to direct contact with the Plaintiff.  Because the letter was appropriate under § 1692c(a)(2), it was not "a threat to take any action that cannot legally be taken" in violation of  § 1692e(5) and it was not an "unfair or unconscionable means to collect a debt" in violation of § 1692f.

---

[2]As discussed *infra*, the letter to Plaintiff's attorney is not actionable under the FDCPA.  In particular, an attorney cannot claim to be misled by a communication to him when he is chargeable with knowledge of the applicable law.

7

## B.  15 U.S.C. § 1692c(c).

The Complaint claims (¶21) that "Defendants by contacting Plaintiff after receiving her June 3, 2020 cease and desist letter, violated . . . 15 U.S.C. § 1692c(c)."  The Complaint alleges (¶12) that the June 3 letter was sent by Plaintiff's attorney to Defendant LVNV to inform LVNV he was representing Plaintiff and that Plaintiff refused to pay the debt and wished to have no further communication regarding the debt.  When in receipt of the January 7 fax, Plaintiff's attorney Vavreck did not inform Rodenburg he was representing Plaintiff.  Despite the letter's clear statement that Rodenburg would contact the Plaintiff directly if there was no response, attorney Vavreck did nothing.  Under these circumstances, Rodenburg could reasonably assume that there was no cease communications directive in effect; and if there had been one, that the Plainitff no longer wished to enforce it.  Plaintiff argues (Mem. in Opp., p. 15) that Defendants "knew Plaintiff was still represented . . . ."   Rodenburg in fact believed that Plaintiff was no longer represented.  Plaintiff argues this is some kind of "comparative negligence argument," and that Defendants' only recourse is the bona fide error defense.  Neither is accurate.  Section 1692c(a)(2) specifies the consequences of counsel's failure to respond within a reasonable time.  Plaintiff argues (p. 17), without authority, that it should be implied that Rodenburg actually knew that she was represented by attorney Vavreck.  The Complaint does allege that LVNV was notified that she was represented in 2020.  From that it cannot be inferred that Rodenburg was aware, 18 months later, that the representation continued.  After Vavreck failed to respond to the January 7 letter, the reasonable assumption was that he

8

did not represent the Plaintiff.

Section 1692c(c) requires that the consumer must notify the debt collector in writing. There is no allegation in the Complaint that Rodenburg was ever notified of a cease communication directive from Plaintiff. Plaintiff argues (Mem. in Opp., p. 18) that LVNV was so notified and that Rodenburg "had knowledge of that fact." Here, as in *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77, 79 (N.D.N.Y. 2001), the Complaint does not allege that Rodenburg had actual knowledge of the cease communications directive. It is not alleged that LVNV conveyed the cease communication directive to Rodenburg, and it is not reasonable to infer that it did so. Plaintiff argues that it can be inferred from contacting attorney Vavreck to see if he still represented Plaintiff. The only thing that can be reasonably inferred from that contact is that Rodenburg was aware of a prior representation.

### C.  15 U.S.C. § 1692e.

This section prohibits false, deceptive, or misleading representations or means in connection with the collection of a debt, specifying 16 examples of such conduct. Plaintiff claims (Mem. in Opp., p. 13) that the January 7 letter threatens actions that cannot legally be taken: contacting Plaintiff despite her cease communications directive and contacting Plaintiff despite her representation by an attorney without giving the attorney a reasonable time to respond. Plaintiff concedes that, to state a claim under § 1692e, the debt collector must have made a false and material representation. *Hill v. Accounts Receivable Services, LLC,* 888 F.3d 343, (8th Cir. 2018), *Peters v. General Service Bureau, Inc*., 277 F.3d 1051,

1056 (8th Cir. 2002). To be materially misleading, the information must "undermine the ability of the consumer to obtain information to intelligently make a decision regarding the alleged debt." *Klein v. Credico, Inc.*, Civil No. 18-659 (DSD/BRT), 2018 WL 3404156, at *3 (D. Minn. July 12, 2018). Plaintiff does not allege that the January 18 letter contains any false or misleading representation of any kind. The letter consists of information mandated by 12 CFR § 1006.34 for any initial communication from a debt collector to a consumer. The information is fair and accurate and threatens no action that cannot legally be taken. Plaintiff's claim that Rodenburg had actual knowledge of the cease communications directive is not alleged in the Complaint and not reasonably inferred from the facts alleged.

The January 7 letter to Plaintiff's attorney was also not false or misleading. Section 1692c(a)(2) expressly authorizes contact with a represented person if the attorney does not respond to inquiry within a reasonable time. Contacting the Plaintiff directly does not violate § 1692c(a)(2) if Plaintiff is no longer represented. Contacting Plaintiff directly does not violate § 1692c(c) if there is no cease communications directive in effect. The January 7 letter indicates that Rodenburg intended to contact the Plaintiff directly if she is not represented and there is no other barrier to direct communications. These are actions it could legally take. Plaintiff's attorney had a reasonable time to respond to the January 7 letter and could have informed Rodenburg as to his representation, and he could have informed Rodenburg if direct contact was improper. He did neither. Plaintiff argues that "even if eleven days was a reasonable amount of time, that does not mean the threatened

10

action (communication in two days) was lawful." [Mem. in Opp., p. 17].

Plaintiff's attorney argues that he did not have to "drop everything" and that "even if eleven days was a reasonable amount of time, that does not mean the threatened action (communication in two days) was lawful." [Mem. in Opp., pp. 15, 17]. This was a letter to the attorney and he understood its contents. Section 1692e is not violated by communications with an attorney. Communications from a debt collection attorney to the consumer's attorney are not actionable under the FDCPA [*Gilani v. Javitch Block, LLC*, 415 F. Supp. 3d 745, 746 (W.D. Tex. 2019)]:

> "**[C]ommunications made by the collecting lawyer to a debtor's attorney are not actionable under the Act**." *Meraz v. M. Susan Rice, P.C.* , 2009 WL 10669232, at *2 (W.D. Tex. May 15, 2009) ; see also *Guerrero v. RJM Acquisitions LLC* , 499 F.3d 926, 936 (9th Cir. 2007); *Kropelnicki v. Siegel*, 290 F.3d 118, 127–28 (2d Cir. 2002) ; *Hill v. Mut. Hosp. Serv., Inc*., 454 F.Supp.2d 779, 782 (S.D. Ind. 2005) ; *Diesi v. Shapiro* , 330 F.Supp.2d 1002, 1004 (C.D. Ill. 2004) ; *Zaborac v. Phillips and Cohen Assocs., Ltd.*, 330 F.Supp.2d 962, 966–67 (N.D. Ill. 2004) ; *Tromba v. M.R.S. Assocs., Inc*., 323 F.Supp.2d 424, 428 (E.D. N.Y. 2004) ; but see *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232–33 (4th Cir. 2007).

> Plaintiff argues that *Meraz* is distinguishable because Defendant here was simply using Plaintiff's counsel, who is honor-bound to relay the information to his client, as a means of conveying misleading information to Plaintiff. However, this argument overlooks the reasoning of *Meraz* and the courts which reach a similar conclusion. In explaining its conclusion, the court in *Meraz* said:

>> The holdings in these cases turn on two basic principles. First, the purpose of the Act is to protect vulnerable and unsophisticated consumers from abusive, deceptive and unfair debt collection practices at the hands of debt collectors. *Guerrero* , 499 F.3d at 938. The consumer's attorney functions as an intermediary between the debt collector and the consumer whose duty it is to protect the consumer from a debt collector's fraudulent or harassing behavior. Id.

> at 938–39; *Kropelnick*i , 290 F.3d at 127–28. Therefore, the Act's purposes are not served by applying its strictures to attorney-to-attorney communications. Second, a consumer and his attorney are not one and the same for the purposes of the Act, which contains distinctions between these two entities. *Guerrero* , 499 F.3d at 935–36. The Act evinces a congressional understanding that "when it comes to debt collection matters, lawyers and their debtor clients will be treated differently." *Id*. at 935.

*Meraz* , 2009 WL 10669232, at *2.

### D.   15 U.S.C. § 1692f.

The Complaint fails to state a plausible claim for relief under §1692f. Recognizing that a plausible allegation of a § 1692f violation must allege conduct separate from the conduct alleged to violate other sections of the FDCPA, Plaintiff's Memorandum in Opposition defends her claim under § 1692f as follows (p. 22):

> Communicating with a consumer when a cease communication directive has been issued and a debt collector has knowledge of this directive is a violation of § 1692c(c).  If the court reads that section differently, and reasons that §1692c(c) does not apply, then there is liability under § 1692f because such conduct is an unfair and unconscionable means to collect a debt.

Section 1692c(c) is likely to be found inapplicable here because the Complaint does not plausibly allege its violation, failing to allege that Rodenburg was notified of a cease communications directive or that Rodenburg knew of one.  The letter of January 18 is also neither unfair nor unconscionable for the same reason.

### CONCLUSION

Based upon the arguments and authorities presented, Defendant Rodenburg LLP respectfully requests the order of this Court dismissing the Complaint for lack of subject

matter jurisdiction. Defendant requests that the Court alternatively dismiss the Complaint for (1) failure to state a claim under 15 U.S.C. § 1692c(c); (2) failure to state a claim under § 1692c(a)(2); (3) failure to state a claim under § 1692e and § 1692e(5); and (4) failure to state a claim under § 1692f and § 1692f(1).

Dated: May 16, 2022

Respectfully submitted,

s/ Clifton Rodenburg
Clifton Rodenburg (MN Bar #0092551)
Amanda Lee (MN Bar #0396976)
RODENBURG LAW FIRM
Attorneys for Defendant Rodenburg LLP
300 NP Avenue, Suite 105
P.O. Box 2427
Fargo, ND 58108-2427
Telephone: 701.235.6411
Fax: 701.235.6678
Email:rodenburgc@aol.com
Email:aleewiebolt@jrllawoffice.com