UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joyce H. Drechen,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Rodenburg, LLP d/b/a Rodenburg Law Firm, and LVNV Funding LLC,<br><br>　　　　　Defendants. | Case No. 22-CV-705 (JRT/LIB)<br><br>**DEFENDANT LVNV FUNDING LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

Plaintiff's case is predicated on a letter dated January 18, 2022 that Defendant Rodenburg, LLP d/b/a Rodenburg Law Firm ("Rodenburg") sent to Plaintiff in an attempt to collect a debt that Plaintiff owed to Defendant LVNV Funding LLC ("LVNV").[1] Plaintiff does _not_ allege that the January 18, 2022 letter was false or threatening in any manner, nor was it. Instead, Plaintiff alleges that merely by sending that _one_ letter directly to her, she experienced "headaches, digestive disorders and chronic pain," and "nervousness, fear of answering the door and telephone, embarrassment, depression, [and] hopelessness." (Doc. 25 at 7.) These alleged injuries are not concrete and particularized; and in a world governed by common sense, bear no causal connection to Rodenburg's actions in sending a single, non-threatening letter to Plaintiff. Plaintiff's efforts to fabricate causal injuries should be rejected. Article III standing is lacking and Plaintiff's Complaint must be dismissed.

---

[1] The January 18, 2022 letter is located at Doc. 11-2.

1

The Complaint must also be dismissed because the January 18, 2022 letter did not violate the FDCPA; and an earlier letter dated January 7, 2022 letter, sent directly to Plaintiff's counsel, is not actionable.

## I.     LEGAL STANDARD

Notably absent from Plaintiff's Memorandum of Law Opposing Defendant LVNV Funding LLC's Motion to Dismiss (Doc. 25, "Plaintiff's Opposition") is the standard for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing. (Doc. 25.) Plaintiff ignores that <u>she</u> "bears the burden of establishing the irreducible constitutional minimum of standing." <u>Spokeo, Inv. v. Robins</u>, 136 S. Ct. 1540, 1543 (2016) (internal quotations omitted).

This requires Plaintiff to show "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190, 2203 (2021). As the Supreme Court has emphasized, the "mere speculation" of injury "cannot satisfy the requirement that any injury in fact must be fairly traceable" to the actions of the defendant. <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 411 (2013).

## II.    FACTS

The salient undisputed facts, largely taken from Plaintiff's Complaint, are as follows:

- Prior to June 19, 2018, Plaintiff incurred a financial obligation with Citibank (the "Account") (notably, the entire unredacted account number is listed in the Complaint, Doc. 1 ¶ 10);

- Plaintiff alleges that thereafter the debt was assigned or transferred to LVNV (Doc. 1 ¶ 11);

- Plaintiff alleges that on June 3, 2020, Plaintiff's counsel sent a letter to LVNV stating that Plaintiff has no ability to pay the debt and to contact the law firm in writing if there are any questions (Doc. 1 ¶ 12);

- On June 23, 2021, Resurgent Capital Services L.P. ("Resurgent") sent Plaintiff's counsel a letter on behalf of LVNV verifying the debt in response to an inquiry that it received (see Doc. 1 ¶ 13);

- On July 14, 2021, Plaintiff's counsel sent Resurgent a letter and advised, *inter alia,* that Plaintiff was represented by counsel with respect to the Account (Doc. 1 ¶ 14);

- Thereafter, the Account was placed with Rodenburg to handle all legal aspects of collections;

- On January 7, 2022, Rodenburg faxed a letter to Plaintiff's counsel to inquire if counsel represents Plaintiff (Doc. 11-1); and

- On January 18, 2022, not having received a response to the January 7, 2022 letter, Rodenburg mailed a letter to Plaintiff (Doc. 11-2).

That is it.

As a result of receiving that one letter, Plaintiff claims to have suffered "nervousness, fear of answering the door and telephone, embarrassment, depression, hopelessness, as well as physical symptoms such as headaches, digestive disorders and chronic pain." (Doc. 1 ¶ 24.). As discussed below, this position so lacks credibility that it requires this Court to see through the self-serving statements made in the pleadings and find that no standing exists. Beyond standing on the outlandish assertions in the pleadings, Plaintiff has also failed to come forward with evidence demonstrating that she has standing. Finally, the letters at issue herein do not violate the FDCPA.

OM 1032454.1

### III.  ARGUMENT

#### A.  Plaintiff Lacks Article III Standing

Plaintiff has failed to establish that her "injuries" are concrete, that the "injuries" are caused by the one letter, or that her injuries would be redressed by judicial relief. As to the first issue, whether Plaintiff has established that her injuries are concrete, Plaintiff confuses Rule 8's pleading standard with Article III's standing requirement and asserts that the Court must accept as true all of the allegations in the Complaint.[2] (Doc. 25 at 7-8.) Of course, that is not the standard as it pertains to Article III, and Plaintiff has the burden of proving a concrete injury that was "*caused* by the defendant." Ojogwu v. Rodenburg L. Firm, 26 F.4th 457, 464 (8th Cir. 2022) (emphasis in original).

##### 1.  Plaintiff Has Not Established a Concrete Harm

###### a.  Plaintiff Has No Tangible Injury

First, Plaintiff asserts that she has a tangible harm, which consists of "physical symptoms," such as headaches, digestive disorders and chronic pain. (Doc. 25 at 7.) Plaintiff offers no authority to support her position that a naked assertion in the pleadings of "physical symptoms," without more, constitute tangible injuries sufficient to establish an injury-in-fact in accordance with TransUnion. Such "physical symptoms" without a qualified medical diagnosis cannot possibly amount to a concrete harm. See Ojogwu v. Rodenburg Law Firm, 26 F.4th 457, 463 (8th Cir. 2022) (holding that "[t]he state of

---

[2] Plaintiff also asserts that she has not had the opportunity to conduct discovery. (Doc. 25 at 5.) This assertion ignores that any and all information that Plaintiff requires to establish standing is solely within Plaintiff's possession and control. Defendant has no discoverable information on Plaintiff's alleged condition. Plaintiff's crocodile tears that she has not been able to conduct discovery on herself should be summarily rejected.

4

confusion is not itself an injury. Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm."). Thus, Plaintiff has not demonstrated a tangible injury.

### b. Plaintiff Has Not Established an Intangible Injury

Second, Plaintiff asserts that she has intangible injuries (i.e., "nervousness, fear of answering the door and telephone, embarrassment, depression, [and] hopelessness"). Plaintiff suggests that Ojogwu supports that such injuries constitute intangible injuries for purposes of Article III standing. (Doc. 25 at 6.) Ojogwu states no such thing. To the contrary, in that case, the Eighth Circuit held that such injuries are insufficient to establish standing, stating:

> Ojogwu's allegations of intangible injury – "fear of answering the telephone, nervousness, restlessness, irritability, amongst other negative emotions" – "fall short of cognizable injury as a matter of general tort law."

Ojogwu, 26 F.3d at 463.

Finally, Plaintiff suggests that her alleged intangible harm is sufficient to establish standing because her injury bears a close relationship to the well-established tort of "intrusion upon seclusion," citing to the Tenth Circuit's decision in Lupia v. Medicredit, Inc., 8 F.4th 1184, 1191 (10th Cir. 2021). (Doc. 25 at 6, 8.) However, Lupia is contrary to binding precedent, Ojogwu v. Rodenburg Law Firm.

In Lupia, a case emanating from Colorado, plaintiff alleged that defendant violated 15 U.S.C. § 1692c(c) by placing one telephone call to her (where the parties did not speak) after receiving a cease-and-desist letter. Lupia, 8 F.4th at 1189. The court focused heavily on "Congress's decision to impose a statutory prohibition" on defendant and grant of a

statutory cause of action to plaintiff. Id. at 1190-91. The court found that the intangible harm alleged (e.g., telephoning plaintiff after it received her cease-and-desist letter) has a close relationship to the tort of intrusion upon seclusion. Id. Although the court recognized that the intrusion must be made "with such persistence and frequency to amount to a course of hounding plaintiff" and that the conduct in that case was one missed telephone call and a voicemail, the court somehow found that plaintiff suffered an injury bearing a "close relationship" to the tort of intrusion upon seclusion. Id. at 1191. Respectfully, the conclusion that the one missed telephone call and resultant voicemail constitutes a demand for payment "with such persistence and frequency to amount to a course of hounding the plaintiff," id. at 1191, defies common sense and is contrary to the Eighth Circuit's decision in Ojogwu.

Like Lupia, the alleged violation in Ojogwu concerned Section 1692c and, contrary to Lupia, the Eighth Circuit found that mailing one document to plaintiff did *not* result in a concrete injury in fact. Ojogwu, 26 F.4th at 464. The Eighth Circuit in Ojogwu recognized that there is an important difference between "(i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering a concrete harm because of the defendant's violation of federal law." Id. at 462. The Eighth Circuit analyzed the alleged intangible injuries and found that intangible injuries, such as negative emotions, are insufficient to establish a concrete injury where the receipt of a communication did not cause plaintiff to act to his detriment or fail to protect his interests. Id. at 462-63. Furthermore, the court found that alleged intangible injuries

as a result of receiving one mailing "falls short of cognizable injury as a matter of general tort law." Id. at 463.

Likewise in this case, Plaintiff's alleged intangible injuries fall short of cognizable injuries as a matter of tort law. Plaintiff intimates that the letter invaded her privacy interest protected by the tort of intrusion upon seclusion. (Doc. 25 at 6.) Regarding the tort of intrusion upon seclusion, Minnesota has only recognized it since 1998, when plaintiffs brought an action alleging that a photograph of their nude bodies was publicized. Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 235 (Minn. 1998); Carlson v. First Revenue Assur., No. 02-209, 2002 WL 31866305, at *3 (D. Minn. Dec. 19, 2002).

The tort of intrusion upon seclusion requires an intrusion that is "highly offensive" and "into some matter in which a person has a legitimate expectation of privacy." Carlson, 2002 WL 31866305, at *3. There is no liability unless the interference is "a substantial one, of a kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object." Id.

Sending *one* letter to Plaintiff via the United States Postal Service that is by any reasonable measure factual and benign is most certainly not "highly offensive to the ordinary reasonable person" and one cannot have a legitimate expectation of privacy in what they receive via U.S. mail. Cf. Sparks v. Phillips & Cohen Assocs., Ltd., 641 F. Supp. 2d 1234, 1253 (S.D. Ala. 2008) (holding that intrusions, such as engaging in telephone dialogue, is a minor intrusion that, at most, is "the sort of inconvenience and nuisance with which every participant in modern-day society must deal on a routine basis."). Indeed, no reasonable fact-finder could conclude that Rodenburg's actions (sending one letter)

constituted a highly offensive intrusion upon Plaintiff's legitimate expectation of privacy. See id. Thus, the conduct alleged here bears no relationship, let alone a "close relationship," to the tort of intrusion upon seclusion.

### c. Case Law Does Not Support That Plaintiff Suffered a Concrete Harm

Finally, in a last-ditch effort to establish a concrete injury, Plaintiff cites to several pre-TransUnion cases and attempts to distinguish the cases that LVNV cited.[3] (Doc. 25 at 8-9.) The cases that Plaintiff cited are inapposite and do not change the Supreme Court's mandate that the injury must be "concrete," meaning it must actually exist. TransUnion, 141 S. Ct. at 2204–207.

In regard to the cases that LVNV cited, Plaintiff asserts that it cited to two cases and they are distinguishable. (Doc. 25 at 9.) Respectfully, LVNV cited to significantly more than two cases. But even as to the two cases that Plaintiff selectively attempted to distinguish in her Opposition, Buchholz and Maxwell, Plaintiff fails to make the case. Plaintiff advances that these cases are distinguishable because neither involved tangible injuries, which exist in this case. (Doc. 25 at 9.) Plaintiff is incorrect. Plaintiff merely

---

[3] In Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 462 (7th Cir. 2020), cert. denied, 141 S. Ct. 2552, 209 L. Ed. 2d 568 (2021), the court found that plaintiff had standing to pursue a cause of action under the Telephone Consumer Protection Act ("TCPA") for unwanted texts, stating that courts have recognized liability for intrusions such as "telephone calls with repeated persistence and frequency as to amount to a course of hounding the plaintiff." In Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 91 (2d Cir. 2019), the court considered whether nonsettling defendants in a putative class action had standing to challenge a provision in a settlement agreement that allegedly barred those defendants' rights. Finally, Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) also concerned the TCPA.

8

alleges that the tangible injuries consist of "headaches, digestive disorders and chronic pain." (Doc. 25 at 7.) However, Plaintiff's mere allegation that she suffered headaches is insufficient to establish standing as a matter of law. Edmonson v. Brennan & Clark Ltd., LLC, No. 18-11, 2021 WL 5140626, at *3 (N.D. Ind. Nov. 4, 2021). Generalized allegations of disorders and pain are insufficient.

Tellingly, Plaintiff spends no effort distinguishing the two Eighth Circuit cases on point, Ojogwu and Schumacher v. SC Data Center, Inc., No. 19-3266, 2022 WL 997742 (8th Cir. Apr. 4, 2022). (Doc. 17 at 6-8.) Again, in regard to Ojogwu, as Plaintiff conveniently ignored, the Eighth Circuit determined that plaintiff's "allegations of intangible injury—'fear of answering the telephone, nervousness, restlessness, irritability, amongst other negative emotions'—'fall short of cognizable injury as a matter of general tort law.'" Ojogwu, 26 F.4th at 463.

In regard to Schumacher, and as discussed in the opening brief, the case fully supports dismissal of this matter. Plaintiff misleadingly asserts that it has already been vacated for rehearing, ignoring that the opinion was superseded on May 3, 2022, thirteen days before Plaintiff filed her Opposition. The Eighth Circuit, in its May 3, 2022 Opinion, concluded that plaintiff lacked standing because she did not establish that she suffered a concrete injury. Schumacher v. SC Data Ctr., Inc., 33 F.4th 504 (8th Cir. 2022).

For the reasons set forth above, Plaintiff has failed to establish that she has an injury that is concrete and particularized.

## 2. Plaintiff Has Not Established That Her "Injuries" Are <u>Caused</u> By the One Letter at Issue

Even if Plaintiff could establish that she has injuries establishing a concrete injury-in-fact, she has not established that those injuries were *caused* by Rodenburg's one letter. Of course, "[f]or the causal connection between the injury and the conduct complained of, the injury must be fairly traceable to the defendant's challenged action and not the result of the independent action of some third party not before the court." <u>White Knight Diner, LLC v. Owners Ins. Co.</u>, 552 F. Supp. 3d 853, 859 (E.D. Mo. 2021) (citing <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992)).

Here, Plaintiff's alleged injuries (fear of answering the telephone and door, nervousness, headaches, digestive disorders, and chronic pain) bear no relationship whatsoever to transmission of one benign letter through the mail. Plaintiff responds that Defendant has tried to "manipulate the pleading standard" by asking the Court to dismiss Plaintiff's claims because Defendant does not believe Plaintiff's allegations. (Doc. 25 at 7.) Of course, Article III standing differs from statutory standing, which impacts the scope and nature of the Court's analysis. <u>Vizcarra v. Unilever United States, Inc.</u>, No. 20-02777, 2020 WL 4016810, at *5 (N.D. Cal. July 16, 2020). This Court is not required to find causation merely upon Plaintiff's bare assertion of said causation. It is certainly not required to ignore common sense and accept that one factual letter received via U.S. Mail could somehow cause chronic pain, digestive disorders, and the other "injuries" that Plaintiff alleges. <u>Cf.</u> <u>United States v. James</u>, 3 F.4th 1102, 1105 (8th Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 1352 (2022) (stating that "the judges were not required to check their

OM 1032454.1

common sense at the door . . . ."). The position defies credulity. Debt collection letters are commonplace in the modern economic world. The Court should not allow Plaintiff to avoid a motion to dismiss through clear fabrication of causality stated in a conclusory and self-serving manner.

There simply can be no causal connection between Plaintiff's alleged injuries and the receipt of one letter. Thus, Article III standing also fails because causation is lacking.

### B. Plaintiff's Complaint Must Be Dismissed Because the Letters Do Not Violate the FDCPA

Plaintiff has asserted that the January 18, 2022 letter violated Sections 1692c(c), 1692c(a)(2), and apparently 1692f. She also claims that the January 7, 2022 letter to her attorney violated Section 1692e(5). The latter claim is easily disposed of. As set forth in Rodenburg's Reply Memorandum (Doc. 28), the January 7, 2022 letter to Plaintiff's attorney is simply not actionable. (Doc. 28 at 9-12.)

As to the January 18, 2022 letter, it does not run afoul of the FDCPA. First, in regard to Section 1692c(c), it is inapplicable. Section 1692c(c) pertains to communications from the consumer to the debt collector, stating:

> If a <u>consumer</u> notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . .

15 U.S.C. § 1692c(c) (emphasis added). LVNV asserted that because *Plaintiff* did not notify LVNV (or Rodenburg) in writing that she refused to pay the debt or wished that communications cease, Section 1692c(c) is inapplicable. (Doc. 17 at 9.) LVNV cited to

11

Tinsley v. Integrity Fin. Partners, Inc., No. 09 C 7925, 2010 WL 11545769, at *2 (N.D. Ill. Mar. 29, 2010), aff'd, 634 F.3d 416 (7th Cir. 2011) to support this proposition.

Plaintiff asserts that Tinsley is inapplicable because that case concerned whether a communication to a consumer's attorney could violate Section 1692c(c). (Doc. 25 at 12.) However, the court in Tinsley analyzed the language in Section 1692c(c) and found that it only references communications with a "consumer" and held that for purposes of Section 1692c(c), "consumer" includes "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." Tinsley, 2010 WL 11545769, **2-3. The same analysis applies to "a consumer" notifying a debt collector in writing—the rules of statutory interpretation require that Section 1692c(c) simply does not apply to communications from or to any attorney because it only refers to communications with a "consumer." Cf. id.

Plaintiff asserts that "multiple courts" have found to the contrary. (Doc. 25 at 13.) The multiple courts that Plaintiff referred to consist of two district court cases that did not specifically address the issue (because defendants did not appear to have raised it). Thus, Plaintiff's Opposition is unconvincing.

In regard to her Section 1692c(a)(2) claim, once again, Plaintiff ignores the plain language of the statute. That Section allows the debt collector to communicate with the consumer with respect to such debt unless the debt collector "knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ." 15 U.S.C. 1692c(a)(2). Even if LVNV had knowledge that Plaintiff was represented by counsel, which is unfounded especially

considering that Plaintiff nor her counsel had communicated with LVNV for over <u>one and a half years</u>, such knowledge is not imputed on Rodenburg. <u>Schmitt v. FMA All.</u>, 398 F.3d 995, 997 (8th Cir. 2005) (holding that "while the knowledge of the agent is imputed to the principal, the converse is not true."). Plaintiff merely speculates that Rodenburg knew that Plaintiff was represented by counsel. (Doc. 25 at 14.) Plaintiff's speculation is not enough to withstand a motion to dismiss.

Finally, in regard to Plaintiff's Section 1692f claim, it fails because it is duplicative of her other FDCPA claims. "Congress enacted Section 1692f to catch conduct *not otherwise covered by the FDCPA*." <u>Spehr v. Seterus, Inc.</u>, No. 18-1922, 2019 WL 4246929, at *6 (E.D. Mo. Sept. 6, 2019) (emphasis in original). Because the Section 1692f claim is premised on the same conduct underlying her other FDCPA claims, judgment must enter for LVNV on this claim. E.g., <u>Caulfield v. Am. Acct. & Advisors, Inc.</u>, No. CIV. 12-2761 DSD/JJK, 2013 WL 1953314, at *3 (D. Minn. May 10, 2013).

For all of these reasons, the January 18, 2022 letter, like the January 7, 2022 letter, does not violate the FDCPA.

### IV.    CONCLUSION

Plaintiff has not established an injury-in-fact that was caused by Rodenburg's transmission of the January 18, 2022 letter to her. She has also not established that the "injury" was caused by the transmission of the January 18, 2022 letter or that her "injury." Thus, she cannot establish Article III standing and, as such, her Complaint must be dismissed.

13

Should the Court find that Plaintiff has established standing, her Complaint must nonetheless be dismissed with prejudice because the January 7, 2022 and January 18, 2022 letters did not violate the FDCPA.

Dated: June 3, 2022  **SPENCER FANE LLP**

By: */s/ Jessica J. Nelson*
Jessica J. Nelson, #347358
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7000
Facsimile: (612) 268-7001
jnelson@spencerfane.com

**SPENCER FANE LLP**

Joshua C. Dickinson (*pro hac vice*)
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-8600
Facsimile: (402) 965-8601
jdickinson@spencerfane.com

*Attorneys for Defendant LVNV Funding LLC*

OM 1032454.1